# United States Court of Appeals
**For the Seventh Circuit  
Chicago, Illinois 60604**

Submitted December 16, 2024  
Decided December 16, 2024

*Before*

MICHAEL B. BRENNAN, *Circuit Judge*

THOMAS L. KIRSCH II, *Circuit Judge*

JOHN Z. LEE, *Circuit Judge*

No. 24-3259

| | |
|---|---|
| TAHINA CORCORAN, as next friend on behalf of JOSEPH E. CORCORAN,<br>    *Petitioner-Appellant*, | Appeal from the United States District Court for the Northern District of Indiana, South Bend Division. |
| *v.* | No. 3:24-CV-970-JD |
| RON NEAL,<br>    *Respondent-Appellee*. | Jon E. DeGuilio,<br>*Judge*. |

**O R D E R**

Joseph E. Corcoran was convicted of quadruple murder and sentenced to death in 1999. Before us is an appeal of the district court order denying a petition for a writ of habeas corpus under 28 U.S.C. § 2254(d), and a motion to stay his December 18, 2024, execution. This order assumes familiarity with:

- the district court's December 13, 2024, opinion and order denying the habeas petition and the motion to stay execution;

- the Indiana Supreme Court's December 10, 2024, opinion declining to authorize the petitions for successive post-conviction relief and denying the requests for stay of execution; and
- the previous decisions of this court, district courts that have ruled on Corcoran's cases, and other previous rulings by the Indiana state courts.

### I.     Standing

The habeas statutes provide for next-friend standing. 28 U.S.C. § 2242. But a next friend may not file a petition for writ of habeas corpus on behalf of a detainee if that detainee could file the petition himself. *Wilson v. Lane*, 870 F.2d 1250, 1253 (7th Cir. 1989) (citation omitted). Citing various behaviors and writings of Corcoran, his wife submits that he is not competent to sign an application for habeas corpus and that she and his attorneys have standing as Corcoran's next friend.

The district court found that Corcoran's wife and his attorneys have next-friend standing to bring this habeas challenge on his behalf. We are somewhat uncomfortable with that conclusion.

The standard for competency to waive habeas proceedings is that the detainee "has capacity to appreciate his position and make a rational choice with respect to continuing or abandoning further litigation or on the other hand whether he is suffering from a mental disease, disorder, or defect which may substantially affect his capacity in the premises." *Rees v. Peyton*, 384 U.S. 312, 314 (1966) (per curiam).

Corcoran has submitted a detailed sworn notarized affidavit that articulately sets forth his desire not to pursue federal relief.[1] His composition and filing of that affidavit undercuts an assertion of incompetency to pursue a habeas petition. We seriously question whether Corcoran's wife and attorneys have proved that he is incompetent to litigate himself. If not, next-friend status is not proper for him.

---

[1] This affidavit is dated November 21, 2024, is reproduced on pp. 9–10 of the district court's opinion and order, and is Attachment F of the appendix to the habeas petition as DE 1 in the district court.

Still, given the expedited manner in which we consider this appeal,[2] we think it prudent to reach the petition's merits.

## II.    Merits

### A.    Habeas Corpus Petition

The habeas petition under 28 U.S.C. § 2254(d) on Corcoran's behalf centers on his competency to be executed. The district court reviewed the evidence as to Corcoran's mental condition, both earlier in this case and recently submitted. Dist. Ct. DE 20 at 7–10. This evidence includes, among other items, a booklet written by Corcoran with conspiratorial theories about the government surveilling and controlling him,[3] as well as Corcoran's handwritten affidavit referenced above.

Title 28 U.S.C. § 2254(d) provides:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim—
>
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

We conclude that Corcoran by his next friend has not satisfied either of these subsections.

---

[2] This appeal was docketed three days ago on December 13, 2024. The parties submitted expedited briefing on December 14 and 15, 2024, and we issue this order on December 16, 2024.

[3] This booklet is Attachment H of the appendix to the habeas petition as DE 1 in the district court.

First, the Indiana Supreme Court's decision was not contrary to clearly established federal constitutional law. Its decision correctly identified the governing rule that the Eighth Amendment prohibits the execution of a prisoner who has lost his sanity after sentencing. Its decision also was not contrary to the requirement of competency elucidated in *Ford v. Wainwright*, 477 U.S. 399 (1986), *Panetti v. Quarterman*, 551 U.S. 930 (2007), and *Madison v. Alabama*, 586 U.S. 265 (2019).

Corcoran's next friend tries to show a "contrary-to" application by arguing that federal courts have not required competency-to-be-executed claims to be subject to the successive-petition-authorization procedure, yet Indiana courts require successive-petition authorization to proceed to a full evidentiary hearing on a claim under *Ford*. But we are not persuaded by this reasoning, as Indiana courts are not required to adopt federal collateral review procedures.

We do not conclude that the Indiana Supreme Court in its December 10, 2024, decision unreasonably applied controlling law about incompetency to be executed. That court correctly identified the governing legal rule. So, the petitioner must show that the court applied that rule unreasonably to the facts. Yet, Corcoran's next friend has not met this requirement. The Indiana Supreme Court's decision (including at pp. 24–27) did not unreasonably apply Supreme Court law when holding that the petition did not make a substantial threshold showing under *Ford*. We also are not persuaded by an argument that Corcoran is merely imitating rationality, and thus fails the competency requirement elucidated in *Ford*, *Panetti*, and *Madison*. The Indiana Supreme Court is not unreasonable for relying on Corcoran's affidavit and reaching the conclusions that it did. The district court correctly recognized this in its well-reasoned opinion and order at pp. 23–30.

Second, the Indiana Supreme Court's decision did not rest on an unreasonable determination of the facts. Our review of the state court's factual findings is highly deferential.

The next friend argues about the weight they believe the state court should have given certain evidence, whether it is Corcoran's November 2024 affidavit or a new expert report by Dr. Angeline Stanislaus. But arguments as to weight are properly made under 28 U.S.C. § 2254(d)(1), not (d)(2). *See Lopez v. Smith*, 574 U.S. 1, 8 (2014).

Under 28 U.S.C. § 2254(e)(1), a determination of a factual issue is presumed correct. The petitioner must rebut that presumption by clear and convincing evidence.

Corcoran's next friend has not done so here. Corcoran was found competent in 2004, and he has not ever been adjudicated incompetent. The record does not show evidence of Corcoran's mental competency degrading since that earlier finding of competency. There is also not a recent evaluation that Corcoran does not understand the reasons for his execution. Indeed, Corcoran's affidavit attests that he does understand his execution and the reasons for it. The state court made no unreasonable factual determinations.

Because there has not been an unreasonable application of federal law as determined by the Supreme Court of the United States, and not been an unreasonable determination of the facts in light of the evidence presented in this lengthy litigation, we agree with the district court that the habeas petition should be denied.

### B.     Motion to Stay

To be granted a stay, Corcoran's next friend must have made a strong showing that he is likely to succeed on the merits, that Corcoran will be irreparably injured absent a stay, that the issuance of the stay will not substantially injure the other parties interested in the proceeding, and that granting a stay is in the public interest. *Nken v. Holder*, 556 U.S. 418, 434 (2009). We review the district court's decision on a motion to stay for an abuse of discretion. *Bourgeois v. Watson*, 977 F.3d 620, 628 (7th Cir. 2020) (citation omitted). The Supreme Court has repeatedly emphasized that "[l]ast-minute stays [of execution] should be the extreme exception, not the norm." *Bucklew v. Precythe*, 587 U.S. 119 (2019).

In reviewing the district court's decision to deny the motion to stay, we focus largely on the first factor. As the stay's proponent, Corcoran's next friend must make a "strong showing" of a likelihood of success on the merits of the underlying claim. *Nken*, 556 U.S. at 434. We have described above the reasons why Corcoran's next friend has failed to make that strong showing in this petition. Corcoran's next friend obviously satisfies the second stay factor of irreparable harm, but the third and fourth factors are more in equipoise. We do note that on the third factor, "equity must be sensitive to the State's strong interest in enforcing its criminal judgments without undue interference from the federal courts." *Hill v. McDonough*, 547 U.S. 573, 584 (2006). And on the fourth factor, all share in the timely enforcement of Corcoran's sentence.

Under the *Nken* factors, we agree with the district court that a stay is not warranted.

* * *

    We agree in material part with the district court's decision here to deny the habeas corpus petition. That court and the Indiana Supreme Court decisions have correctly resolved the questions raised by Corcoran's next friend.

    For these reasons, the district court's judgment is AFFIRMED, and the motion to stay execution is DENIED.

LEE, *Circuit Judge*, dissenting. A federal court may grant habeas relief only if the state court's adjudication of the merits of the claim resulted in a decision that is: (1) "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States"; or (2) "based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d). Because the Indiana Supreme Court unreasonably applied the well-established standard governing competency-for-execution articulated in *Ford v. Wainwright*, 477 U.S. 399 (1986); *Panetti v. Quarterman*, 551 U.S. 930 (2007); and *Madison v. Alabama*, 586 U.S. 265 (2019), I respectfully dissent. Given the time constraints, I will briefly summarize my reasons below.

The Indiana Supreme Court premised its ruling on Joseph Corcoran's competency to be executed on two grounds: (1) its 2005 decision affirming the state trial court's determination that Corcoran was competent to waive post-conviction relief; and (2) Corcoran's statements in his affidavit filed on November 21, 2024. *See Corcoran v. State*, – N.E.3d –, 2024 WL 5052384, at *12–14 (Ind. Dec. 10, 2024). In doing so, the court violated *Ford* and *Panetti* in two ways.

First, the court believed it had already decided Corcoran's competency for execution in 2005. *See id.* at *14 ("When concluding that Corcoran was competent to waive post-conviction remedies [in 2005], we concluded that he has a non-delusional understanding of these legal proceedings. And part of what we relied on was his 'reasoning that his death sentence is commensurate with the crime he committed (the conclusion to which both the original trial court jury and judge came).'") (citing *Corcoran v. State*, 820 N.E.2d 655, 661 (Ind. 2005)). But the competency standard the court used in 2005 was based on *Dusky v. United States*, 362 U.S. 402 (1960), and *Rees v. Peyton*, 384 U.S. 312 (1966), which considers a defendant's "capacity to appreciate his position and make a rational choice with respect to continuing or abandoning further litigation." *Rees*, 384 U.S. at 314. This is markedly different from the standard governing a prisoner's competency to be executed, which asks "whether a prisoner's mental state is so distorted by a mental illness that he lacks a rational understanding of the State's rationale for his execution." *Madison*, 586 U.S. at 269 (cleaned up). "Or similarly put, the issue is whether a prisoner's concept of reality is so impaired that he cannot grasp the execution's meaning and purpose or the link between his crime and its punishment." *Id.* (cleaned up).

In 2005, the Indiana Supreme Court held that "Corcoran's awareness of his legal position and his ability to formulate a rational justification for forgoing further post-

conviction review make him competent to waive such review under either *Rees* or *Dusky*." *Corcoran*, 820 N.E.2d at 662. By treating its 2005 decision as conclusive here, the Indiana Supreme Court effectively substituted the *Rees* standard in place of the *Ford/Panetti* standard.

The court's error is perhaps most apparent in the following statement: "Our determination that Corcoran could waive his post-conviction remedies included an analysis of whether his mental illness interfered with his ability to understand why the State was executing him. And now that a challenge to competency for execution is ripe, there is no indication that Corcoran's understanding of why he is to be executed has changed." *Corcoran*, 2024 WL 5052384, at *14. In *Panetti*, however, the United States Supreme Court was careful to note that "[a] prisoner's awareness of the State's rationale for an execution is not the same as a rational understanding of it." 551 U.S. at 959. In *Panetti's* parlance, the Indiana Supreme Court determined in 2005 that Corcoran had the capacity to understand the rationale for his execution, but it did not inquire (because it had no reason to) whether Corcoran had a rational understanding of it. And, indeed, to date, no court has conducted such an inquiry.

Putting aside the differing standards, the relevance of Corcoran's 2003 competency finding to the current inquiry is at best questionable. Twenty years have passed since that evaluation, and, as the Supreme Court had recognized, "[p]rior findings of competency do not foreclose a prisoner from proving he is incompetent to be executed because of his present mental condition." *Panetti*, 551 U.S. at 934. The Indiana Supreme Court, on the other hand, assumed that Corcoran's condition had not changed in the last two decades. *Corcoran*, 2024 WL 5052384, at *13 ("Virtually all the evidence the State Public Defender cites is the evidence we previously considered when determining Corcoran could waive post-conviction remedies."). But Petitioner has offered new evidence that Corcoran's severe paranoid schizophrenic delusions not only continue but also cause him to hide his condition from the world and feign sanity.[1]

---

[1] For example, in his recently published book, *Electronic Harassment: A Whistleblower Report*, Corcoran states that he wants to show that his belief that prison officials are using an ultrasound machine to control him and others "is not a nut job conspiracy theory, but is basic electronics." DE 1, Appendix, Attachment H at 13 (181a). Later, he continues, "If a credentialled medical person says a man is mentally ill, but he says that he is the victim of electronic harassment, who would people be more likely to believe? So because of this the victimizer's cover is not seemingly backed up by medical science." *Id*. at 20 (188a).

This leads to the second point. To support its belief that Corcoran is competent to be executed and nothing has changed, the Indiana Supreme Court placed much stock in the statements Corcoran made in his November 21, 2024, affidavit. *See id.* at *12–14. But, because Corcoran filed his affidavit after briefing had concluded, the Indiana Supreme Court did so without providing defense counsel an opportunity to respond to it. This is precisely the lack of due process the Supreme Court condemned in *Ford* and *Panetti*. *See Ford*, 477 U.S. at 415 (noting that the state procedure did not allow a defendant to challenge or impeach the opinion of the state-appointed psychiatrists who deemed him competent); *Panetti*, 551 U.S. at 948 (noting that the state court reached its competency determination after failing to provide petitioner with "an adequate means by which to submit expert psychiatric evidence in response to the evidence that had been solicited by the state court").

The Indiana Supreme Court's reliance on Corcoran's untested affidavit is particularly troubling given that defense counsel's entire theory is premised on Corcoran's inability to rationally comprehend the reasons behind his execution and his efforts to hide his true motivations for seeking the death penalty. Indeed, the Supreme Court has found the law "clearly established" that "[o]nce a prisoner seeking a stay of execution has made a 'substantial threshold showing of insanity,' the protection afforded by procedural due process includes a 'fair hearing' in accord with fundamental fairness." *Panetti*, 551 U.S. at 949 (quoting 28 U.S.C. § 2254 and *Ford*, 477 U.S. at 426).[2]

For these reasons, I believe that the Indiana Supreme Court unreasonably applied the standard the Supreme Court announced in *Ford* and *Panetti* for evaluating a prisoner's competency to be executed. Given Corcoran's long, undisputed history of severe mental illness and the pervasiveness of his continuing delusions, as evidenced by his book and recent medical records, Corcoran is entitled to have at least one court assess his competency to be executed under the proper *Ford/Panetti* framework.

Turning to Petitioner's motion for a stay of execution, courts evaluating a stay must consider an applicant's likelihood of success on the merits and potential for irreparable injury, as well as injury to other parties and the public interest. *See Nken v.*

---

[2] It bears mentioning that Corcoran has recanted similarly unequivocal attestations of waiver. *See Corcoran*, 820 N.E.2d at 657. Because death is irrevocable, this history should lead us to view his current statements with a skeptical eye.

*Holder*, 556 U.S. 418, 434 (2009). Here, Petitioner has established a likelihood of success on her claim that the state court failed to provide an adequate hearing to determine Corcoran's competency to be executed. The record contains undisputed and extensive expert evidence of Corcoran's paranoid schizophrenia and the resultant pervasive delusions from which he has long suffered. When recognizing that gross delusions may render a prisoner incompetent to be executed, the Supreme Court in *Panetti* accepted observations by two experts and similarly "extensive evidence of mental dysfunction considered in earlier legal proceedings" to conclude that "the state court failed to provide petitioner [there] with the minimum process required by *Ford*." *Panetti*, 551 U.S. at 950. Here, too, Petitioner is likely to demonstrate a substantial threshold showing of insanity mandating a fair hearing under *Ford*.

Additionally, in a death-penalty case like this one, the equities of irreparable harm tip strongly in Petitioner's favor. While the harm to the State and the victims may be delay in the duly imposed sentence (a valid interest), the potential harm to Corcoran is experiencing the "barbarity of … mindless vengeance," which serves no public interest. *See Ford*, 477 U.S. at 410. Accordingly, I would grant Petitioner's motion for a stay so that the state court can evaluate Corcoran's competency to be executed as required by *Ford* and *Panetti*.[3]

For these reasons, I respectfully dissent.

---

[3] A couple of additional issues warrant mention. Regarding the district court's ruling as to procedural default, as I see it, the Indiana Supreme Court's determination regarding Corcoran's competency to waive post-conviction relief depends primarily on federal law or is interwoven with federal law. Accordingly, it does not rest on an independent and adequate state law ground. *See Richardson v. Lemke*, 745 F.3d 258, 269 (7th Cir. 2014). As to standing, the district court properly found that Tahina Corcoran has adequately shown that she is a proper next friend for the purposes of the preliminary stages of this habeas case. My colleagues' reliance on Corcoran's recent affidavit is problematic for the reasons I have explained. Thus, I would affirm that finding.